1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

12

SKILSTAF, INC., on behalf of itself and all others similarly situated,

Plaintiff,

vs.

CVS CAREMARK CORP.; LONGS DRUG STORE CORPORATION; THE KROGER CO.; NEW ALBERTSON'S, INC.; RITE AID CORPORATION; SAFEWAY, INC.; SUPERVALU, INC.; WALGREEN CO.; and WAL-MART STORES, INC.,

Defendants.

CASE NO. CV 09-2514 SI

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

| | |
|---|---|
| Date: | January 15, 2010 |
| Time: | 9:00 a.m. |
| Ctrm: | 10 |
| Judge: | Hon. Susan Illston |

**[SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.  SKILSTAF'S CLAIMS ARE BARRED BY THE *NEW ENGLAND CARPENTERS* COVENANT NOT TO SUE................................................................... 2

    A.  As a Matter of Law, Skilstaf Cannot Collaterally Attack The *New England Carpenters* Settlement................................................................... 3

        1.  Since the *New England Carpenters* Court Indisputably Followed Requisite Procedures under Rule 23, and Carefully Considered All Due Process Issues, Collateral Attack Is Not Permitted ............................ 3

        2.  As A Party That Itself Appeared and Argued in *New England Carpenters*, Skilstaf Is Foreclosed From Collaterally Attacking The Covenant on Due Process Grounds ................................................................... 5

    B.  Skilstaf's Suggestion That Another Party Could Be Substituted In Its Place Is Incorrect and Unavailing................................................................... 6

    C.  Given The Clear And Unambiguous Covenant, Discovery Is Neither Appropriate Nor Necessary................................................................... 8

II.  SKILSTAF'S CLAIMS ARE TIME-BARRED ................................................. 10

    A.  Skilstaf's RICO Claims Are Time-Barred.......................................... 10

    B.  Skilstaf's Unjust Enrichment Claims are Untimely, and its Amorphous Allegations of "Mistake" Cannot Excuse the Delay ............................ 13

III.  SKILSTAF'S RICO CLAIMS FAIL ON THE MERITS................................. 16

    A.  The Complaint Alleges No Facts That Defendants Conducted The Affairs Of A RICO Enterprise................................................................... 16

    B.  The Complaint Alleges No Facts Establishing That Defendants Participated in a RICO Enterprise................................................................... 18

    C.  The Complaint Alleges No Facts Showing A Pattern of Racketeering .............. 19

    D.  The Complaint Does Not Allege Facts Sufficient To Sustain A RICO Conspiracy Claim................................................................... 20

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

1

**TABLE OF CONTENTS**

2
**Page**

3
IV.    SKILSTAF ALSO FAILS TO STATE A CLAIM FOR UNJUST
ENRICHMENT ................................................................................................ 21

4

5
A.    An Unjust Enrichment Claim Is Legally Unsustainable Where, As Here,
Express Contracts Govern The Parties' Rights, Regardless Of Contractual
Privity ............................................................................................................... 21

6

7
B.    Skilstaf Is Unable to Allege Facts Demonstrating that Each Defendant
Has Been Enriched By Skilstaf, Let Alone Unjustly Enriched........................... 23

8
CONCLUSION .................................................................................................... 24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Aetna Cas. Sur. Corp. v. P&B Autobody*
43 F.3d 1546 (1st Cir. 1994) ...................................................................................... 17, 18

*Allstate Ins. Co. v. Stone*
No. CV 07-1481-PHX-JAT, 2008 WL 802268 (D. Ariz. Mar. 24, 2008) ....................... 17, 18

*Ashcroft v. Iqbal*
__ U.S. __, 129 S. Ct. 1937 (2009) ........................................................................... 24

*Beck v. Prupis*
529 U.S. 494 (2000) .................................................................................................. 13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .............................................................................................. 23, 24

*Bertucelli v. Carreras*
467 F.2d 214 (9th Cir. 1972) ..................................................................................... 23

*Board of Sch. Comm'rs v. Jacobs*
420 U.S. 128 (1975) .................................................................................................... 7

*Boyle v. United States*
129 S. Ct. 2237 (2009) .............................................................................................. 18

*Clayton v. Landsing Pacific Fund, Inc.*
No. C 01-03110 WHA, 2002 WL 1058247 (N.D. Cal. 2002) ........................................ 14

*Cummings v. Briggs & Stratton Ret. Plan*
797 F.2d 383 (7th Cir.), *cert. denied*, 479 U.S. 1008 (1986) ................................... 16

*Deutsch v. Turner Corp.*
324 F.3d 692 (9th Cir. 2003) ..................................................................................... 13

*Diaz v. Century Pac. Inv. Corp.*
No. CV 91-1329-WMB, 1991 WL 331372 (C.D. Cal. Dec. 16, 1991) ............................. 19

*Dooley v. Crab Boat Owners Ass'n*
No. C 02-0676 MHP, 2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ................................. 19

*Dosier v. Miami Valley Broad. Corp.*
656 F.2d 1295 (9th Cir. 1981) ..................................................................................... 5

*Epstein v. MCA, Inc.*
179 F.3d 641 (9th Cir. 1999) ....................................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Flores v. Emerich & Fike*
No. 1:05-CV-0291 AWI DLB, 2008 WL 2489900 (E.D. Cal. June 18, 2008) ..................... 12

*Galen v. Mobil Oil Corp.*
922 F. Supp. 318 (C.D. Cal. 1996)........................................................................................ 14

*Gonzales v. Texaco, Inc.*
C 06-02820 WHA, 2007 WL 4044319 (N.D. Cal. 2007)...................................................... 13

*Grimmet v. Brown*
75 F.3d 506 (9th Cir. 1996)................................................................................................... 11

*Handel v. Artukovic*
601 F. Supp. 1421 (C.D. Cal. 1985)..................................................................................... 13

*Hitt v. Arizona Beverage Co. LLC*
No. 08cv809WQH-POR, 2009 U.S. Dist. LEXIS 109702 (S. D. Cal. Nov. 24, 2009) ........... 6

*In re Actimmune Mktg. Litig.*
 No. C08-02376 MHP,2009 WL 3740648 (N.D. Cal. Nov. 06, 2009) ................................... 15

*In re American Funds Sec. Litig.*
556 F.Supp.2d 1100 (C.D. Cal. 2008) ................................................................................. 11

*In re Diet Drugs Prods. Liab. Litig.*
431 F.3d 141 (3d Cir. 2005)..................................................................................................... 4

*In re Jamster Mktg Litig.*
No. 05cv0819 JM(CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009) .............................. 20

*In re Pharm. Indus. Average Wholesale Price Litig.*
491 F. Supp. 2d  20 (D. Mass. 2007) ................................................................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................................... 12

*Keilholtz v. Lennox Hearth Prods. Inc.*
No. C 08-00836 CW, 2009 WL 2905960 (N.D. Cal. Sept. 8, 2009) ..................................... 14

*Kelly v. City & County of San Francisco*
No. C 05-1287 SI, 2008 U.S. Dist. LEXIS 108871 (N.D. Cal. June 30, 2008)....................... 8

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004)............................................................................................ 17

- iv -

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Kreek v. Wells Fargo & Co.*
No. C 08-01830 WHA, 2009 WL 2581300 (N.D. Cal. 2009) ................................................ 11

*Kremens v. Bartley*
431 U.S. 119 (1977) ....................................................................................................... 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
350 F.3d 1018 (9th Cir. 2003) ................................................................................... 7, 8

*Molski v. Gleich*
318 F.3d 937 (9th Cir. 2003) ................................................................................... 4, 10

*Natomas Gardens Inv. Group, LLC v. Sinadinos*
No. CIV. S-08-2308 FCD/KJM, 2009 WL 1363382 (E.D. Cal. May 12, 2009) ................... 21

*Nehmer v. United States Dep't of Veterans Affairs*
494 F.3d 846 (9th Cir. 2007) ................................................................................... 10

*Nelson v. International Paint Co.*
716 F.2d 640 (9th Cir. 1983) ................................................................................... 13

*New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*
2009 WL 1513390 (N.D. Cal. May 29, 2009) ........................................................ 13, 14

*Newcal Indus., Inc. v. IKON Office Solution*
513 F.3d 1038 (9th Cir. 2008) ................................................................................... 18

*Odom v. Microsoft Corp.*
486 F.3d 541 (9th Cir. 2007) ................................................................................... 18

*Pincay v. Andrews*
238 F.3d 1106 (9th Cir. 2001) ................................................................................... 12

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*
522 F.3d 1049 (9th Cir. 2008) ........................................................................... 14, 16

*Puerto Rico Am. Ins. Co. v. Burgos*
556 F. Supp.2d 86 (D. Puerto Rico 2008) .................................................................. 17

*Putowski v. Irwin Home Equity Corp.*
423 F. Supp. 2d 1053 (N.D. Cal. 2006) ..................................................................... 6

*Reves v. Ernst & Young*
507 U.S. 170 (1993) ..................................................................................... 16, 17

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page(s)

4

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
442 F.3d 741 (9th Cir. 2006)........................................................................................ 5, 6

5

*Rutledge v. Boston Woven Hose & Rubber Co.*
6  576 F.2d 248 (9th Cir. 1978)...................................................................................... 11, 15

7

*Salinas v. United States*
522 U.S. 52 (1997)...................................................................................................... 20, 21

8

9

*Sasser v. Amen*
No. C 99-3604 SI, 2001 WL 764953 (N.D. Cal. July 2, 2001) ............................................ 12

10

*State Farm Mut. Auto. Ins. Co. v. Grafman*
11  No. 04-CV-2609, 2009 U.S. Dist. LEXIS 86451 (E.D.N.Y. Sep. 21, 2009).................... 19, 20

12

*State Farm Mut. Auto. Ins. Co. v. Harold Abrams*
No. 96 C 6365, 2000 U.S. Dist . LEXIS 6837 (N.D. Ill. May 11, 2000)................................ 17

13

14

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007)........................................................................................ 18, 19

15

*Velazquez v. GMAC Mortgage Corp.*
16  No. 08-5444, 2009 U.S. Dist. LEXIS 88547 (C. D. Cal. September 10, 2009) ...................... 6

17

*Volk v. D.A. Davidson & Co.*
816 F.2d 1406 (9th Cir. 1987)............................................................................................ 12

18

19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
396 F.3d 96 (2d Cir. 2005)................................................................................................... 5

20

*Wiener v. The Dannon Co.*
21  255 F.R.D. 658 (C.D. Cal. 2009) ......................................................................................... 7

22

<u>**CALIFORNIA CASES**</u>

23

*Ashland Chemical Co. v. Provence*
129 Cal. App. 3d  790 (1982)…………………………………………………………………13

24

25

*Brinton v. Bankers Pension Servs., Inc.*
76 Cal. App. 4th 550 (1999) ................................................................................................. 9

26

*California ex rel. Metz v. CCC Info. Servs., Inc.*
27  149 Cal. App. 4th 402 (2007) ........................................................................................ 14, 16

28

- vi -

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*
94 Cal. App. 4th 151 (2001) ......................................................................... 21

*FDIC v. Dintino*
167 Cal. App. 4th 333 (2008) ....................................................................... 16

*First Nationwide Sav. v. Perry*
11 Cal. App. 4th 1657 (1992) ....................................................................... 16

*General Motors Corp. v. Superior Court*
12 Cal. App. 4th 435 (1993) ........................................................................... 9

*Grisham v. Philip Morris U.S.A., Inc.*
40 Cal. 4th 623 (2007) ................................................................................. 13

*Hess v. Ford Motor Co.*
27 Cal. 4th 516 (2002) ............................................................................. 9, 10

*Long v. Walt Disney Co.*
116 Cal. App. 4th 868 (2004) ....................................................................... 15

*Palmer v. Truck Ins. Exch.*
21 Cal. 4th 1109 (1999) .................................................................................. 9

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*
96 Cal. App. 4th 884 (2002) ......................................................................... 14

*Stevenson v. Baum*
65 Cal. App. 4th 159 (1998) ......................................................................... 15

*Vahle v. Barwick*
93 Cal. App. 4th 1323 (2001) ................................................................... 9, 10

**OTHER STATE CASES**

*Alexander v. Alabama Western R.R. Co.*
60 So. 295 (Ala. 1912) .................................................................................. 22

*Servewell Plumbing, LLC v. Summit Contractors, Inc.*
210 S.W.3d 101 (Ark. 2005) .................................................................... 22, 23

*Vardaman v. Florence City Bd. of Educ.*
544 So.2d 962 (Ala. 1989) ............................................................................ 22

# TABLE OF AUTHORITIES
(continued)

PAGE(S)

## FEDERAL STATUTES AND RULES

18 U.S.C. § 1962 ...................................................................................... 13, 17, 18, 19

Fed. R. Civ. P. 9(b) ...................................................................................... 15, 19, 20

Fed. R. Civ. P. 23 ............................................................................................ 1, 3, 4, 7

## CALIFORNIA STATUTES

Cal. Civ. Code § 1641 ............................................................................................... 9

Cal. Civ. Proc. Code § 338.................................................................................. 15, 16

Cal. Civ. Proc. Code § 339.................................................................................... 13

## TREATISES

Restatement 2d Conflicts of Laws § 221 .............................................................. 22

Restatement of Restitution § 107(1) ...................................................................... 15

Wright & Miller, 5 Fed. Prac. & Proc. § 1224 (3d ed. 2009) ....................................... 24

1

**INTRODUCTION**

2          Skilstaf's Opposition to Defendants' Motion to Dismiss is an exercise in avoidance.

3    Skilstaf first attempts to back away from its status as both a class member and an objector in the

4    *New England Carpenters* action, hoping to escape the bar of an unambiguous and enforceable

5    covenant that it *will not sue* the Defendants on the very facts and theories alleged in this case.

6    Skilstaf then runs from the allegations of its own Complaint, since those allegations prove that all

7    of Skilstaf's claims are time-barred.  Finally, Skilstaf tries to paper over the gaping holes in its

8    Complaint with distortions and misreadings of its own allegations.

9          Skilstaf's attempt to dodge the *New England Carpenters* covenant not to sue ignores two

10   critical facts that foreclose its ability to collaterally attack the settlement in this Court on due

11   process grounds:  (1) The *New England Carpenters* court indisputably followed Rule 23

12   procedures and found (over Skilstaf's objection) that the class settlement was fair and fully

13   satisfied due process in an Order and Final Judgment entered after an extensive fairness hearing;

14   and (2) Skilstaf was not an "absent" *New England Carpenters* class member -- in fact, Skilstaf

15   had notice of the covenant, argued that it should be stricken, and was afforded an opportunity to

16   opt-out. Yet, Skilstaf purposefully chose not to opt out and not to appeal.  As a result, Skilstaf is

17   foreclosed, as a matter of law, from collaterally attacking the covenant on due process grounds in

18   this or any other court.  Since Skilstaf's claims are barred by the covenant, no actual case or

19   controversy exists.  That defect cannot be remedied by Skilstaf's suggestion that the Court allow

20   it to substitute a hypothetical, unidentified plaintiff in its place.  Skilstaf's attempt to argue that

21   "discovery" is required regarding the parties' intent behind the covenant is likewise unavailing;

22   the covenant is unambiguous and Skilstaf has not presented any reasonable alternative

23   interpretation.

24          Skilstaf's suit also cannot overcome the applicable limitations bars — four years for the

25   RICO claims and two years for the unjust enrichment claim.  Both Skilstaf's Complaint and

26   Opposition show that Skilstaf had inquiry notice of its possible claims more than four years prior

27   to the filing of its suit.  Skilstaf effectively concedes that instead of conducting any investigation

28   (let alone a reasonably diligent one), Skilstaf did *nothing*.  Skilstaf's conclusory assertion that it

could not have discovered the basis for its claims prior to late 2008 is belied not only by the allegations of the Complaint that Skilstaf knew it experienced an unprecedented spike in drug prices in 2001-2002, and by the "perfect storm of information" regarding "the rampant abuse of the AWP system" that existed at that time, but also by the fact that similarly situated plaintiffs represented by the same lawyers who filed this suit brought an action based on the same allegations more than four years ago. Cries of "fraudulent concealment" do not help Skilstaf because Skilstaf does not and cannot plead with particularity any affirmative conduct on the part of any Defendant that could have led a reasonable person to believe that he did not have a claim for relief. Likewise, Skilstaf's Complaint lacks any of the factual predicates required for the arguments that its claims are saved by either "the separate accrual rule" (RICO) or "fraud or mistake" (unjust enrichment).

Skilstaf's suit founders not only because of these fatal covenant and limitations bars, but also because of the utter inadequacy of its substantive allegations. The RICO claims fail because Skilstaf has not alleged *any* facts as to *any* Defendant to support the elements of those claims. Ultimately, Skilstaf does little more in its Opposition than parrot the same legally insufficient conclusory allegations contained in its Complaint.

Finally, because the prices Skilstaf paid for its drug purchases are governed by the express terms of written contracts, Skilstaf's unjust enrichment claim fails as a matter of law. Regardless of whether Skilstaf contracted with Defendants directly or through a middleman, the cases make clear that unjust enrichment cannot be invoked to evade the express price terms of those contracts. In any event, Skilstaf's unjust enrichment claim is unsustainable because Skilstaf has not alleged any facts demonstrating that each Defendant has been enriched by Skilstaf, let alone unjustly enriched.

## **ARGUMENT**

### I.     **SKILSTAF'S CLAIMS ARE BARRED BY THE *NEW ENGLAND CARPENTERS* COVENANT NOT TO SUE**

Skilstaf argues that this Court should not dismiss this putative class action because (i) the settlement and opt-out notices (which included the covenant not to sue) in the *New England*

1   *Carpenters* action did not satisfy due process, (ii) the covenant did not extinguish Skilstaf's

2   claims, or if it did, then this Court should allow Skilstaf to substitute another party in its place as a

3   plaintiff, and (iii) discovery is necessary to determine the parties' intent in including the covenant

4   in the *New England Carpenters* settlement.  Skilstaf's arguments fail because they are based on a

5   misreading of the applicable case law, ignore crucial facts from the *New England Carpenters*

6   case, and are belied by the very cases Skilstaf cites.

7          **A.       As a Matter of Law, Skilstaf Cannot Collaterally Attack *The New England***
              ***Carpenters* Settlement**
8

9          Skilstaf claims that enforcing the covenant not to sue would violate due process because

10  absent class members in the *New England Carpenters* case did not receive adequate notice of the

11  covenant's inclusion in the settlement and a renewed opportunity to opt out.  Of course, the *New*

12  *England Carpenters* court – in response to Skilstaf's objection –  has already determined that the

13  class procedures employed there fully satisfied due process, and explicitly made that finding

14  before entering its Order and Final Judgment approving the McKesson class settlement.  Having

15  lost its direct due process attack before the *New England Carpenters* court and having abandoned

16  its right to appeal, Skilstaf now seeks to collaterally attack that same class settlement in this

17  Court, hoping for a different result.  For the reasons discussed below, Skilstaf's attempted end run

18  around the *New England Carpenters* Order and Final Judgment fails as a matter of law.

19          **1.       Since the *New England Carpenters* Court Followed Requisite**
                        **Procedures under Rule 23, and Carefully Considered All Due Process**
20                      **Issues, Collateral Attack Is Not Permitted**

21         Citing *Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999), Skilstaf asserts that an absent

22  class member has the right to seek collateral review of a class action judgment in another court.

23  In fact, *Epstein*'s holding is completely to the contrary.  There, the Ninth Circuit left no doubt that

24  an absent class member's due process rights are protected *not* by such a collateral attack, but

25  instead by the certifying court's determinations, and by review of those determinations by the

26  appropriate appellate court.  *Id.* at 648.  ("Due process requires that an absent class member's

27  right[s] … be protected by the adoption of the appropriate procedures by the certifying court and

28  by the courts that review its determinations; due process does not require collateral second-

1    guessing of those determinations and that review."); *See generally, In re Diet Drugs Prods. Liab.*

2    *Litig.*, 431 F.3d 141 (3d Cir. 2005).[1]

3         It cannot be disputed that the *New England Carpenters* court followed requisite

4    procedures:  The court provided the class with notice of certification and settlement and the

5    opportunity to opt out and be heard, entertained numerous objections at the fairness hearing, and

6    thereafter determined in its Order and Final Judgment that both Fed. R. Civ. P. 23(b)(3) and due

7    process were satisfied.  In fact, the *New England Carpenters* court recently reiterated that holding

8    when it denied a motion requesting relief from judgment by another class member, Health

9    Management Associates, Inc. ("HMA").  Like Skilstaf, HMA objected that the settlement terms

10   barring claims against all other persons, including the retail pharmacies, violated due process.

11   The *New England Carpenters* court considered the issue and decided to the contrary:

12       Due process requires "notice reasonably calculated, under all the circumstances, to
         apprise interested parties of the pendency of the action and afford them an
13       opportunity to present their objections."  *Due process can be satisfied where the
         settlement notice sets forth the release provision verbatim, even if it is a release
14       that extends to claims asserted in other related litigation.*  "The fact that the
         release provisions of the settlement agreement may have ramifications on disputes
15       between the parties which were not part of the class claims does not require
         discussion or disclosure of such ramifications in either the Notice of Settlement or
16       the settlement agreement itself."  "[D]ue process [does not] require[] further
         explanation of the effects of the release provision in addition to the clear meaning
17       of the words of the release."

18       Under the circumstances here, HMA received sufficient notice.  *HMA was aware
         of its alleged claims against retail pharmacies and was actively interested in
19       litigation, or at least the threat of litigation, asserting those claims.  Given that,
         the notice here, quoting the release verbatim, was sufficient to give HMA notice of
20       the scope of the settlement's release, and HMA's due process claim fails.*

21   *See November 5, 2009 Memorandum and Order,* 05-cv-11148-PBS, No. 855 at 7-8

22   (internal citations omitted), attached to Defendants' Supplemental Request for Judicial

23
     ───────────────────
24   [1]  Skilstaf also relies on *Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003), and other inapplicable
     class action cases.  First, rather than involving collateral attacks on a district court's orders or
25   procedures, those cases principally concerned direct appellate review of a district court's
     certification orders.  Second, those cases concerned classes that had been certified under Fed. R.
26   Civ. P. 23(b)(2) (for injunctive and declaratory relief) that were being used to prohibit class
     members from seeking money damages in other litigation.  The courts ruled that such a
27   prohibition was improper because the Rule 23(b)(2) class notices did not have certain procedural
     protections (such as an opportunity to opt out) required in cases certified under Rule 23(b)(3)
28   (seeking primarily damages).  None of these factors is present here.

1   Notice concurrently filed herewith ("Supp. RJN") as Exhibit I (emphasis added).

2   These findings – and *Epstein*'s holding – confirm that the time and place for consideration

3   of Skilstaf's (or any other class member's) due process objections was at the fairness hearing in

4   the *New England Carpenters* action, not before this Court in a separate action.  Skilstaf attempts

5   to skirt around this prohibition by claiming that the language in Paragraph 17 of the Order and

6   Final Judgment allows it to challenge the enforceability of the "any other person language" in this

7   Court.  But Skilstaf's collateral attack is not, as the order expressly requires, "otherwise permitted

8   by law," and Paragraph 17 therefore does nothing to rescue Skilstaf from the legal bar that

9   precludes relitigation of its due process objections.

### 2.   As A Party That Itself Appeared and Argued in *New England Carpenters*, Skilstaf Is Foreclosed From Collaterally Attacking The Covenant on Due Process Grounds

12   Skilstaf appeared and argued at the *New England Carpenters* July 23, 2009 fairness

13   hearing and raised there the very same due process issues it is raising here.  The law expressly

14   bars Skilstaf from seeking a "do-over":  "a class member who is represented by counsel during a

15   class action settlement hearing . . . cannot attack the settlement collaterally."  *Reyn's Pasta Bella,*

16   *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (plaintiffs estopped from collaterally

17   attacking in the Northern District of California the release contained in a class action settlement in

18   the Eastern District of New York); *Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1299

19   (9th Cir. 1981) (plaintiff could not collaterally attack class settlement because he participated in

20   the class action and could have challenged it on direct appeal); *Wal-Mart Stores, Inc. v. Visa*

21   *U.S.A., Inc.*, 396 F.3d 96, 114-116 (2d Cir. 2005).

22   In its Opposition, Skilstaf acknowledges that it made an informed, strategic decision to

23   withdraw its objection to the settlement – rather than opt out of the settlement or appeal from the

24   Order and Final Judgment.  Skilstaf explains that it made this decision so that it and other *New*

25   *England Carpenters* class members could "immediately" receive the McKesson settlement funds.

26   *see* Pl.'s Opp. at 6:19-8:2.  Skilstaf's decision to take the money and abandon the right to opt out

27   or appeal precludes it as a matter of law from challenging the settlement in this or any other court.

28   *Reyn's Pasta Bella*, 442 F.3d at 747 (because plaintiff chose not to pursue its objection to the

- 5-

scope of the class release on appeal in New York, it was precluded from relitigating the issue in California).

Having had its day in court, obtained relief, and made its choice, Skilstaf now must live with the consequences:  Skilstaf does "not get a second bite of the apple to challenge collaterally the same issue in the Northern District of California" that it previously challenged in the District of Massachusetts. *Id.* at 747.[2]

## B.      Skilstaf's Suggestion That Another Party Could Be Substituted In Its Place Is Incorrect and Unavailing

Realizing the weakness of its other arguments, Skilstaf requests that – if the covenant is enforced – the Court allow Skilstaf's attorneys to substitute a hypothetical, unidentified plaintiff (one allegedly not subject to the *New England Carpenters* covenant not to sue) to serve as a potential class representative.  *See* Pl.'s Opp. at 13:18-14:1.  That is not permissible as a matter of law; when named plaintiff/class representative is found to have no claim or is barred from bringing a claim, the case must be dismissed.  *Hitt v. Arizona Beverage Co. LLC*, No. 08cv809WQH-POR, 2009 U.S. Dist. LEXIS 109702 at * 11-16 (S. D. Cal. Nov. 24, 2009).[3] Consequently, if this Court finds that the covenant bars Skilstaf's claims, this case ends:  There would no longer be an actual "case or controversy" under Article III.  *Id.*; *Velazquez v. GMAC Mortgage Corp.*, No. 08-5444, 2009 U.S. Dist. LEXIS 88547 at * 8-10 (C. D. Cal. September 10, 2009) (finding that because the plaintiff had no standing to sue the defendants and the class had not been certified, dismissal of the action, not the replacement of the plaintiff, was proper.); *Putowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053, 1063-4 (N.D. Cal. 2006) ("At the time [plaintiff] filed suit, he was barred from bringing the []claim…Thus, he cannot be an adequate class representative as to the [] claim, and the claim must be dismissed."); *Kremens v.*

---

[2]   Whatever theoretical distinction there may be between a release and a covenant not to sue is irrelevant because the effect of the covenant is that Skilstaf cannot bring the claims pled in the Complaint.  By withdrawing its objection and accepting the *New England Carpenters* settlement, Skilstaf forfeited its right to pursue any attempt to "establish liability" against "any other person", whether in this or any other action.

[3]   Courts have allowed the substitution of named plaintiffs *after* class certification in certain circumstances, but that is not the case here.

*Bartley*, 431 U.S. 119, 132-3 (1977) ("[I]t is only a 'properly certified' class that may succeed to the adversary position of a named representative whose claim becomes moot."); *Board of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975) ("[I]t seems clear that a case or controversy no longer exists between the named plaintiffs and the petitioners with respect to the validity of the rules at issue.  The case is therefore moot unless it was duly certified as a class action pursuant to Fed. R. Civ. P. 23…").[4]

When, as here, a plaintiff has no standing to bring a claim, the entire case – even if it is a class action or putative class action – should be dismissed.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003).  In *Lierboe*, the plaintiff brought a class action alleging that a provision in the defendant's insurance policy prohibiting insureds from "stacking" insurance policies to cover medical claims was void.  The defendant argued that there was no stacking issue because the plaintiff's claim for medical bills was barred by the clear coverage language in her insurance policy.  The district court certified the class under Rule 23(b)(3), and the defendant appealed.  While the action was pending before the Ninth Circuit, the Supreme Court of Montana responded to a certified question by finding that the plaintiff did not have a stacking claim because the "clear and unambiguous language" of her policy precluded her recovery.  *Id.* at 1021.  The Ninth Circuit then remanded the case to the district court with instructions to dismiss, stating "[i]f the individual plaintiff lacks standing, the court need never reach the class action issue." *Id.* at 1022, citing *Newberg on Class Actions*.

---

[4]   The two cases Skilstaf cites in its Opposition were on the cusp of class certification and involved other exceptional facts and circumstances that are not present here.  *See Stickrath v. Globalstar, Inc.*, No. C07-1941 THE, 2008 U.S. Dist LEXIS 105692 (N.D. Cal. Dec. 22, 2008) (on the day of the class certification hearing and in the interest of judicial economy, the court allowed 28 days (with no additional time) for the complaint to be amended and a new class representative substituted because substantial effort had already been put into the case, a motion for class certification had been filed and set to be heard, and numerous other potential plaintiffs had already been identified); and *Wiener v. The Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009) (after the class certification hearing and a lengthy written decision holding that all of the elements necessary to certify a class had been met except typicality (plaintiff had purchased only one of the two falsely advertised goods in dispute), court allowed *12 days* for the substitution of "an appropriate class representative".)

1   Just as the insurance policy deprived the plaintiff of standing to bring an individual claim

2   in *Lierboe*, the unambiguous language of the covenant not to sue deprives Skilstaf of standing to

3   bring individual claims against Defendants in this case.  Because Skilstaf has no individual claim

4   against any of the Defendants, it, like the plaintiff in *Lierboe*, cannot seek relief on behalf of itself

5   or any purported putative class members.  Thus, this case should be dismissed.

6   **C.**      **Given The Clear And Unambiguous Covenant, Discovery Is Neither**
       **Appropriate Nor Necessary**

7

8   Skilstaf argues that if the Court finds the covenant enforceable, it should be allowed to

9   take discovery to determine whether the parties in *New England Carpenters* intended the

10   covenant not to sue to benefit Defendants.  This is a red herring, and in so arguing, Skilstaf

11   misreads applicable law.

12   The folly of Skilstaf's argument becomes clear when viewed against the contractual

13   language that it seeks to attack, which is set forth in Section 15 of the Settlement Agreement:

14   > All Releasers covenant and agree that they shall not hereafter seek to establish
     > liability against any Released Party *or any other person* based, in whole or in part,
     > on any of the Released Claims.  (emphasis added)

15

16   This plain language – read together with the defined terms in the Settlement Agreement –

17   unambiguously bars Skilstaf from bringing this action because (i) Skilstaf is a "Releaser" seeking

18   to "establish liability" (ii) the covenant extends to "any other person," which includes each and

19   every Defendant, and (iii) the claims asserted by Skilstaf in this action are "Released Claims,"

20   since they are based on the use of AWP and the allegations in the *New England Carpenters* case.

21   *See* Def.'s Mem. at 11:23-13:13.

22   Parol evidence is *not* admissible under California law to contradict these express and

23   unambiguous terms of the *New England Carpenters* settlement.  *Kelly v. City & County of San*

24   *Francisco*, No. C 05-1287 SI, 2008 U.S. Dist. LEXIS 108871 at * 9-13 (N.D. Cal. June 30, 2008)

25   (Illston, J.) (granting defendants' motion to exclude certain plaintiffs from class settlement

26   because of a release they accepted in a previous settlement, and holding that plaintiffs could not

27   bring in extrinsic evidence to narrowly construe a release of "any and all claims" when the

28   language of the release was not reasonably susceptible to that interpretation).  Although Skilstaf

1   complains about the impact of the covenant, it has not provided any reasonable alternative

2   construction of that covenant – which it must do to meet its burden of showing ambiguity.

3   *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (contractual language is "ambiguous

4   *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its

5   terms") (emphasis in original).  Since there is no ambiguity about the meaning and effect of the

6   covenant's plain language, parol evidence is inadmissible and discovery wholly unnecessary.

7     California courts have readily applied these same basic contract principles to find –

8   without resort to parol evidence – that unnamed third-parties benefit from and are covered by

9   broad release language that is, like that here, clear and unambiguous.  *General Motors Corp. v.*

10  *Superior Court*, 12 Cal. App. 4th 435, 440 (1993) (settlement agreement between a tortfeasor and

11  an accident victim that released the tortfeasor by name and "any and all other persons, firms, and

12  corporations, whether herein named or referred to or not," clearly and unambiguously "release[d]

13  every person or entity from liability" for the accident, including the unnamed manufacturer of the

14  automobile involved in the accident, as it was a member of the "class of persons for whose

15  benefit [the release] was made").  The California Court of Appeal readily applied these same

16  basic contract principles to a class settlement agreement that contained a broad release covering

17  all present and future litigation concerning certain limited partnership investments in *Brinton v.*

18  *Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550 (1999).  In doing so, the court held – without

19  resort to any parol evidence – that the defendant was a third-party beneficiary of the clear and

20  unambiguous language of the settlement agreement.  The *Brinton* court also specifically found

21  that narrowly interpreting the agreement to cover only those parties named would render the

22  reference to the broader release language "mere surplusage and violate the principle that, where

23  possible, the entire contract should be given effect (Civ. Code § 1641.)"  *Id.* at 560.  For these

24  reasons, resort to parol evidence to interpret the clear and unambiguous language of the covenant

25  not to sue would be improper as a matter of law, and thus Skilstaf has no basis for discovery – or

26  for that matter, for directing the Court's attention to *any* evidence outside of the agreement itself.[5]

27   5 Skilstaf attempts to get around this clear prohibition by citing cases such as *Hess v. Ford
28  Motor Co.*, 27 Cal. 4th 516 (2002), and *Vahle v. Barwick*, 93 Cal. App. 4th 1323 (2001), for the
principle that discovery is allowed and parol evidence is always admissible in cases involving

- 9-

1    Proper application of these contract and settlement principles – and concern for the

2    consequences of violating them – is particularly important in class actions where class

3    representatives must negotiate, and the court must approve, terms that are clear, unambiguous,

4    and benefit the class as a whole.  Thus, adherence to plain language, without resort to extrinsic

5    evidence, is particularly appropriate for class action settlement agreements.  *Nehmer v. United*

6    *States Dep't of Veterans Affairs*, 494 F.3d 846, 861 (9th Cir. 2007); *Molski v. Gleich*, 318 F.3d

7    937, 946 (9th Cir. 2003).  Given the importance of certainty and clarity in the interpretation and

8    enforcement of class action settlement agreements, this Court should not – and has been given no

9    reason to – accept Skilstaf's invitation to reject the plain language of a negotiated and judicially

10   approved class action settlement.

11   **II.    SKILSTAF'S CLAIMS ARE TIME-BARRED**

12       **A.    Skilstaf's RICO Claims Are Time-Barred**

13       Skilstaf concedes that its RICO claims are time-barred if, more than four years before

14   filing suit, it had sufficient information available to warrant an investigation that would have led

15   to discovery of the alleged "scheme."  (Pl.'s Opp. at 17:14-19:6.)  The facts alleged in the

16   Complaint confirm that Skilstaf had such information.

17       First, Skilstaf pleads that there were hundreds of otherwise "extraordinarily rare" price

18   increases in 2002 – increases that caused Skilstaf and other third-party payors to pay "billions" of

19   dollars in increased reimbursements.  Those unprecedented price increases are the very injury

20   Skilstaf alleges, and they triggered its duty to investigate. (Compl. ¶ 21, 321.)

21

22
_____

23   third party beneficiaries.  That is a misstatement of the law.  First, the *Vahle* court made it clear
     that it was permitting discovery only because (i) the release language, when read under the

24   circumstances of the case, created an ambiguity, (ii) *none* of the parties to the underlying lawsuit
     had any discernable motive to release their attorneys from a malpractice suit, (iii) it was

25   "unusual" that a personal injury settlement would include a release of an attorney malpractice
     claim, and (iv) the evidence provided by *both* parties showed that it was not the parties' intent to
     release the attorney from such claims.  *Id.* at 1329.  Second, *Hess* involved a case of mutual

26   mistake, where both parties submitted uncontroverted evidence to the court that neither of them
     intended to release the party seeking the protection of the release. The case *did not* involve using

27   parol evidence to contradict or "clarify" the clear and unambiguous terms of a release. *Hess,* 27
     Cal. 4th at 525 ("Hess offered no reasonable alternative construction of the contractual language

28   ostensibly releasing Ford and therefore failed to allege any ambiguity in this language").

Second, a simple comparison of WAC prices, which Skilstaf acknowledges are "publicly available" (Compl. ¶ 57), to the AWP prices Skilstaf used for drug reimbursement purposes (Compl. ¶ 14-15), shows that the price increases Skilstaf experienced were attributable to an increase in WAC-to-AWP mark-up. Notably, Skilstaf does not and cannot allege that a reasonably diligent investigation more than four years ago would not have uncovered the facts allegedly underlying this phenomenon.

In fact, as noted in Defendants' opening memorandum, parties in the exact same position as Skilstaf and represented by the same lawyers that filed this lawsuit discovered and filed a lawsuit detailing the exact scheme alleged by Skilstaf here more than 4 years ago.[6] Indeed, Skilstaf acknowledges that, beginning in the late 1990s, there was increased "government scrutiny" into AWPs and "well-publicized AWP-related litigation." (Compl. ¶ 118.)

Thus, Skilstaf does not assert that such a comparison of publicly available information was not or could not have been performed more than four years ago – rather, it avers that it does not "typically" "scrutinize" WAC-to-AWP mark-ups, but rather monitors "overall price trends." (Compl. ¶ 86.) Skilstaf cannot escape the requirement to conduct a reasonable investigation of its injuries by simply asserting that it usually does not pay attention to such matters.

Skilstaf similarly fails to offer any factual allegations to support its fraudulent concealment argument, and has thus "waive[d] the tolling defense." *Grimmet v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996). To allege fraudulent concealment, Skilstaf would have to plead with particularity "affirmative conduct upon the part of *the defendant* which would . . . lead a reasonable person to believe that he did not have a claim for relief." *Rutledge v. Boston Woven*

---

[6] Contrary to Skilstaf's assertion, the original complaint in *New England Carpenters* alleges the identical scheme alleged by Skilstaf: that "major retail pharmacies" had "urged McKesson" to "increase the WAC/AWP spread by 5%" in order to "make a profit off the increased spread." *See New England Carpenters* at 45-47. *Cf. In re American Funds Sec. Litig.*, 556 F.Supp.2d 1100, 1109-10 (C.D. Cal. 2008) (prior complaint "when taken together with all of the other information in the public domain regarding" abuses by mutual fund companies "would have put anyone giving reasonable attention to the subject on notice"); *Kreek v. Wells Fargo & Co.*, No. C 08-01830 WHA, 2009 WL 2581300, 3 (N.D. Cal. 2009). Indeed, in commenting on the claims asserted in this case, the *New England Carpenters* court stated that it was unaware of "any legitimate grounds" for "the Skilstaf litigation or any other pending litigation against retail pharmacies" because such claims were time-barred. *New England Carpenters*, No. 05-11148, attached as Exh. F to Pl.'s Opp.

1    *Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (emphasis added). Skilstaf has not done

2    so, and it cannot do so. The Complaint fails to identify *a single* statement that any Defendant

3    ever made to Skilstaf, let alone a "fraudulent" one. Skilstaf's assertion that "the RICO

4    Defendants" submitted claims for reimbursement in the regular course of business

5    "notwithstanding their knowledge of the falsity of these claims" (Pl.'s Opp. at 26:10-11 (quoting

6    Compl. ¶ 245)), fails to meet Skilstaf's burden because "[defendants'] silence or passive conduct

7    does not constitute fraudulent concealment." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416

8    (9th Cir. 1987); *Flores v. Emerich & Fike*, No. 1:05-CV-0291 AWI DLB, 2008 WL 2489900, at

9    *21 (E.D. Cal. June 18, 2008) ("Merely keeping someone in the dark is not the same as

10   affirmatively misleading the plaintiff."); *cf. In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.

11   Supp. 2d 1109, 1132 (N.D. Cal. 2008) (fraudulent concealment claim survived motion to dismiss

12   only because plaintiff alleged that defendants made "numerous pretextual and false justifications

13   disseminated to consumers regarding defendants' price increases").

14        Skilstaf's argument regarding the separate accrual rule is also flawed. Skilstaf attempts to

15   escape the force of this Court's separate accrual analysis in *Sasser v. Amen*, No. C 99-3604 SI,

16   2001 WL 764953, at *7 (N.D. Cal. July 2, 2001), by pointing to the fact that the *Sasser* plaintiffs

17   knew of the policies that caused their injury. (Pl.'s Opp. at 23:13-24:6) But the *Sasser* plaintiffs'

18   knowledge had nothing to do with this Court's determination that the separate accrual rule did not

19   apply. Rather, this Court's *Sasser* holding turned on plaintiffs' inability to show "new and

20   independent acts [by defendants] inflicting new and accumulating injuries on plaintiffs within the

21   limitations period." *Id.* at *7. Because Skilstaf has not shown and cannot show "any new and

22   independent acts inflicting new and accumulating injuries" to it within the limitations period, the

23   separate accrual rule does not save the RICO claims from the limitations bar as a matter of law.

24        Finally, Skilstaf's attempt to invoke the statute of limitations accrual period used in

25   criminal RICO conspiracies cases is simply wrong. Skilstaf has not pointed to a single case

26   where the criminal "time of withdrawal" accrual period has ever been applied to a civil RICO

27   claim. No court has held that a plaintiff may evade the "injury discovery" rule by claiming that

28   the statute of limitations was tolled so long as the defendant failed to "withdraw" from the

- 12-          DEFENDANTS' REPLY MEMORANDUM IN
                                                                    SUPPORT OF MOTION TO DISMISS

1    conspiracy.  To the contrary, the Ninth Circuit has "continuously followed the 'injury discovery'

2    statute of limitations rule for civil RICO claims."  *See Pincay v. Andrews*, 238 F.3d 1106, 1109

3    (9th Cir. 2001).  Moreover, the Supreme Court has refused to apply criminal rules to civil RICO

4    conspiracy claims, reasoning that "a mere violation [is] all that is necessary for criminal liability,"

5    whereas civil liability requires a showing of *injury* by reason of a conspiracy.  *See Beck v. Prupis*,

6    529 U.S. 494, 501 n.6 (2000).  Thus, the injury discovery rule applies equally to Skilstaf's

7    § 1962(d) conspiracy claims, and those claims, like the substantive claims under § 1962(c), are

8    time-barred as a matter of law.

9         **B.    Skilstaf's Unjust Enrichment Claims are Untimely, and its Amorphous
              Allegations of "Mistake" Cannot Excuse the Delay**

10

11        The parties agree that, under California law, Skilstaf's cause of action, to the extent it is

12   "premised on Defendants' [alleged] unjust enrichment," is subject to a two-year statute of

13   limitations.  Pl.'s Opp. at 27:17-18 (citing Cal. Civ. Proc. Code § 339).[7]  That limitations period

14   accrued when Skilstaf had inquiry notice of its alleged "loss or damage."  Cal. Civ. Proc. Code

15   § 339; *see* Def.'s Mem. at 24:10-12.  The complaint alleges losses from 2001 to 2004.

16        California law *presumes* Skilstaf had inquiry notice of its losses *when they occurred.  See*

17   Def.'s Mem. at 24:18-19 (citing *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638

18   (2007)); *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, 2009 WL 1513390,

19   *3 (N.D. Cal. May 29, 2009) ("The threshold for inquiry notice in California is quite low—that is,

20

21   [7]   Skilstaf concedes that California's "governmental interest" approach to choice of law is
     applicable to determine the appropriate statute of limitations.  Pl.'s Opp. at 27 n.24.  Here,
     California's two-year statute of limitations applies to Skilstaf's unjust enrichment claim because
22   no Defendant's state of residence has a *shorter* limitations period.  *See Handel v. Artukovic*, 601
     F. Supp. 1421, 1434-35 (C.D. Cal. 1985) (explaining that California's statute applies if it is
23   shorter than the statute in the Defendant's state of residence); *Gonzales v. Texaco, Inc.*, C 06-
     02820 WHA, 2007 WL 4044319, *4-6 (N.D. Cal. 2007) (same); *id.* at *5 (citing *Deutsch v.
24   Turner Corp.* 324 F.3d 692, 717 (9th Cir. 2003)) ("Ninth Circuit expressly stated the presumption
     in favor of California law when its statute of limitations was shorter.").  Skilstaf's observation
25   that some states have *longer* statutes of limitations is irrelevant.  *See Handel*, 601 F. Supp. at
     1434 ("[U]nder California law, the limitations statute of the foreign jurisdiction is not applicable
26   where it provides for a *longer* period than the relevant California statute."); *see also Nelson v.
     International Paint Co.*, 716 F.2d 640, 644 (9th Cir. 1983) (the purpose of statutes of limitations
27   is "to protect the enacting state's residents and courts from the burdens associated with the
     prosecution of stale cases") (quoting *Ashland Chemical Co. v. Provence*, 129 Cal. App. 3d  790,
28   794 (1982)).

1    very little is required to put a plaintiff on inquiry notice.")  Skilstaf has failed to "specifically

2    plead facts" to rebut that presumption.  *Id.*  To the contrary, Skilstaf's Complaint and Opposition

3    only bolster the presumption of awareness.  The unprecedented 2001-2004 price increases that

4    Skilstaf complains about were themselves sufficient to put Skilstaf on inquiry notice; moreover,

5    these prices increases were part of what one court called "a perfect storm of information"

6    regarding "the rampant abuse of the AWP system."  *In re Pharm. Indus. Average Wholesale*

7    *Price Litig.*, 491 F. Supp. 2d 20, 41 (D. Mass. 2007); *see also supra* pp. 10-11.

8         In the face of these admitted extraordinary circumstances, Skilstaf's responsibility was *to*

9    *inquire.*[8]  Skilstaf not only failed to bring suit; it admits it took *no action whatsoever* to

10   investigate the reason for its sudden surge in payments.  *See* Def.'s Mem. at 25:25-26:4.

11   Although others in the industry discovered the alleged scheme, consulted lawyers, and filed

12   lawsuits alleging the exact same scheme alleged here – Skilstaf argues, without any explanation,

13   that it had a  "[l]ack of means" to make any inquiry.  Pl.'s Opp. at 28:6-7 (quoting *Keilholtz v.*

14   *Lennox Hearth Prods. Inc.*, No. C 08-00836 CW, 2009 WL 2905960, at *4 (N.D. Cal. Sept. 8,

15   2009) (refusing to apply delayed discovery rule)); *cf.* Def.'s Mem. at 25:8-13, 25:27-26:4.  That

16   contention, unsupported by *any factual allegations*, is facially implausible and fails to meet

17   Skilstaf's pleading burden as a matter of law.  *See Galen v. Mobil Oil Corp.*, 922 F. Supp. 318,

18   322 (C.D. Cal. 1996) (plaintiff must allege "facts showing that [it] was not negligent in failing to

19   make the discovery sooner").  There is no showing, or even any allegation, that Skilstaf lacked

20   the means to check the prescription prices it paid, to review the published price reports it

21   received, or to consult with counsel or other industry participants concerning the reasons for

22   rising prices.

23        As with its RICO claims, Skilstaf's attempt to invoke "fraudulent concealment" to toll the

24   limitations period is unavailing.  First, that doctrine is inapplicable where, as here, Skilstaf had

25

26   _____

     [8]    *See* Def.'s Mem. at 25:25-26:4; *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049,
27   1054 (9th Cir. 2008) (citation omitted) ("[T]he plaintiff must go out and find the facts; she cannot
     wait for the facts to find her.'"); *California ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App.
28   4th 402, 416 (2007) (plaintiff has "constructive notice of the fact itself in all cases in which, by
     prosecuting such inquiry, he might have learned such fact.")

1    inquiry notice of its claims. *New Amsterdam* at *3 (citing *Snapp & Assocs. Ins. Servs., Inc. v.*

2    *Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890-91 (2002)); *see also, e.g.*,

3    *Clayton v. Landsing Pacific Fund, Inc.*, No. C 01-03110 WHA, 2002 WL 1058247, *7 (N.D. Cal.

4    2002); *Stevenson v. Baum*, 65 Cal. App. 4th 159 (1998). Second, to allege fraudulent

5    concealment, Skilstaf would have to plead with particularity "affirmative conduct upon the part of

6    the defendant" to conceal the claims. *Rutledge*, 576 F.2d at 250. Skilstaf does not and cannot

7    allege any such affirmative conduct by the Defendants. *See* supra p. 11; *see also Long v. Walt*

8    *Disney Co.*, 116 Cal. App. 4th 868, 874 (2004) ("[N]ondisclosure is not fraudulent

9    concealment—affirmative deceptive conduct is required.").

10   Skilstaf suggests that even if an unjust enrichment claim would ordinarily be barred by the

11   two-year statute of limitations, its unjust enrichment claim here might alternatively be construed

12   as a claim predicated on "fraud or mistake" – and that such fraud or mistake claims are subject to

13   a three-year limitations period. Pl.'s Opp. at 28:4 (citing Cal. Civ. Proc. Code § 338(d)).

14   Although any "fraud" or "mistake" claim would also be untimely, the fundamental problem with

15   this argument is that Skilstaf pleads no such claim with the required particularity.[9] Indeed,

16   Skilstaf insists that its unjust enrichment claim is premised on "only two elements": "receipt of

17   benefit and unjust retention." Pl.'s Opp. to Kroger Mem. at 2:21-22; *accord, id.* 5:5-6. As a

18   result, Skilstaf has failed to plead any fraud or mistake claim against the Defendants with the

19   particularity required by law. Skilstaf does not (and could not) allege that it was induced by fraud

20   or mistake to enter into the contracts and does not seek their rescission. *See* Def.'s Mem. at

21   37:14-39:5.

22   Moreover, there is no legally cognizable claim of "mistake in making overpayments"

23   where, as here, the payments in question were made pursuant to the terms of express contracts.

24   Def.'s Mem. at 37:14-39:5; *accord,* Restatement of Restitution § 107(1); *see* Compl. at ¶ 6

25   (alleging payments made pursuant to contract terms). Skilstaf paid the prices the contracts

26   _____

[9]   *In re Actimmune Mktg. Litig.*, Slip Copy, No. C08-02376 MHP,2009 WL 3740648, *6, *16
27   (N.D. Cal. Nov. 06, 2009) (unjust enrichment claim based on fraud must meet Rule 9(b)
     particularity requirements); Fed. R. Civ. P. 9(b) (particularity requirements apply to fraud and
28   mistake).

1  required; the doctrine of mistake is inapplicable as a matter of law.[10]  Skilstaf offers no authority,

2  or even any argument to the contrary.[11]  Skilstaf alleges "unjust enrichment" plain and simple.

3  Because Skilsfaf failed to file its complaint within the applicable two-year limitation period, its

4  unjust enrichment claim is time-barred as a matter of law and should be dismissed.

## III.  SKILSTAF'S RICO CLAIMS FAIL ON THE MERITS

### A.  The Complaint Alleges No Facts That Defendants Conducted The Affairs Of A RICO Enterprise

8  As set forth in Defendants' opening memorandum, to conduct the affairs of a RICO

9  enterprise, one must "participate in the operation or management of the enterprise itself." *See*

10  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Skilstaf's "core allegation" is that the RICO

11  Defendants participated with McKesson and First DataBank in a scheme to inflat[e] AWPs, and

12  defraud Plaintiff and members of the Class for the purpose of increasing the RICO Defendant's

13  profits.  (Pl.'s Opp. at 31:24-32:1 (quoting Compl. ¶ 262)).  Yet, Skilstaf points to no facts

14  supporting that claim or from which its "core allegation" may be reasonably inferred.  Rather, the

15  Complaint alleges that, after McKesson and First DataBank acted on their own to fraudulently

16  inflate AWP, McKesson had to "market [its] efforts" to the pharmacy defendants, lest its efforts

---

[10]  Even if Skilstaf's "fraud or mistake" claim were colorable, it would be barred because Skilstaf had inquiry notice of the alleged "fraud or mistake" by 2002 and failed to inquire.  *See supra* pp. 13-14.  California courts "have long interpreted Code of Civil Procedure section 338 to commence upon the discovery by the aggrieved party of the fraud *or* facts that would lead a reasonably prudent person to *suspect* fraud." *California ex rel. Metz*, 149 Cal. App. 4th at 416 (emphasis in original) (citation omitted). That means that, after becoming "aware of injury," a plaintiff claiming fraud or mistake is "required to conduct a reasonable investigation and [is] charged with knowledge of the information" that "would have been revealed by such an investigation." *Platt*, 522 F.3d at 1054, 1056 (citing section 338 and affirming dismissal without leave to amend of plaintiff's "fraud or mistake" claims as time-barred); *see also supra* pp. 10-11 (Plaintiff would have discovered the basis for its supposed "fraud" claims if it had conducted an investigation) (quoting Compl. at ¶ 57).

[11]  The "mistake" cases cited by Skilstaf do not involve payment or other conduct *required by contract.  See FDIC v. Dintino*, 167 Cal. App. 4th 333, 339, 347-48 (2008) (plaintiff's "mistake" was inadvertent recordation request not made pursuant to contract); *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1670 (1992) (trustee's "mistake" was unintended reconveyance "not authorized" by any contract); *cf. Cummings v. Briggs & Stratton Ret. Plan*, 797 F.2d 383, 390 (7th Cir.), *cert. denied*, 479 U.S. 1008 (1986) (enrichment "is not 'unjust' where it is allowed by the express terms" of a contract) (citing *Craig v. Bemis Co.*, 517 F.2d 677, 684 (5th Cir. 1975)); Def.'s Mem. at 37:14-39:5 (same).

1    to inflate prices "*go unrecognized*" by the very defendants Skilstaf accuses of participating in the

2    conduct of the scheme.  (Compl. ¶ 181 (emphasis added).)  Far from alleging participation in the

3    scheme, the Complaint instead asserts that the RICO Defendants were unaware of the scheme

4    until allegedly informed of it by McKesson after the fact.  Skilstaf fails to address this blatant

5    contradiction.  Because Skilstaf has failed to plead that the RICO Defendants conducted, or

6    participated in the conduct of, a RICO enterprise, Skilstaf's § 1962(c) claim should be dismissed.

7          Skilstaf's support for its argument that the mere submission of drug reimbursement claims

8    constitutes "participation" in the operation or management of a RICO enterprise is the First

9    Circuit's decision in *Aetna Cas. Sur. Corp. v. P&B Autobody*, 43 F.3d 1546 (1st Cir. 1994).

10   However, that decision is inconsistent with controlling Ninth Circuit precedent, and has been

11   squarely rejected.  In *Allstate Ins. Co. v. Stone*, No. CV 07-1481-PHX-JAT, 2008 WL 802268 at

12   *3 (D. Ariz. Mar. 24, 2008), the court dismissed an insurer's RICO claim against defendants who

13   were merely alleged to have submitted false claims for payment.  In doing so, the court rejected

14   the First Circuit's decision in *Aetna*:

15          The *Aetna* case, however, is a First Circuit case that gives a broader interpretation
            of the *Reves* test than has been applied by the Ninth Circuit . . . .  If the Court were
16          to adopt the broad application of the *Reves* test found in the *Aetna* case, then
            almost any fraud, regardless of whether the alleged participants had any actual
17          control over the operation or management of the enterprise's affairs, would fall
            under the federal RICO statute.  This is clearly not the legislative intent behind
18          1962(c) and does not properly apply the *Reves* operation and management test.
            The Court is bound by the Ninth Circuit's narrower application of the principles
19          stated in *Reves*, and therefore will not rely on the First Circuit's interpretation of
            the operation and management test.
20

21   *Id.* (internal citations omitted).

22          Moreover, *Aetna* is readily distinguishable.  In contrast to *Aetna*, there are no allegations

23   in Skilstaf's Complaint that the RICO Defendants conspired with, bribed, or otherwise sought to

24   influence anyone with respect to the submission of claims.  There is no allegation that the RICO

25   Defendants did anything other than submit claims in the ordinary and regular course of business

26   and in accordance with their contractual obligations.[12]  Thus, even if the claims submitted by the

27   ――――――――――――――――
     [12]   The other cases cited by Skilstaf did not involve the submission of claims in regular course of
28   business and are inapposite.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Harold Abrams,* No. 96
     C 6365, 2000 U.S. Dist . LEXIS 6837 (N.D. Ill. May 11, 2000) (fabrication of claims and medical

1    RICO Defendants could somehow be characterized as false (which they cannot), such

2    submissions would still be insufficient to allege participation in a RICO conspiracy.  As the

3    *Allstate* court stated, even under *Aetna*, "[s]ubmitting false documents to Plaintiffs is not enough

4    to render Defendants liable under 18 U.S.C. § 1962(c) when Defendants are complete outsiders to

5    Plaintiffs' affairs."  *See id.*

6
        **B.      The Complaint Alleges No Facts Establishing That Defendants Participated**
7                 **in a RICO Enterprise**

8            Skilstaf's Complaint does not allege a single fact supporting the conclusion that the RICO

9    Defendants were part of an association-in-fact RICO enterprise.  Skilstaf's attempt at defending

10   this fatal omission by asserting that the Ninth Circuit's pleading standard is "not very demanding"

11   is unavailing.  (Pl.'s Opp. at 30:6-9.)  Whether or not the Ninth Circuit's pleading standard can be

12   characterized as "demanding," the bald, conclusory allegations in Skilstaf's Complaint do not

13   satisfy its pleading burden.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)

14   (complaint must inform each defendant individually of specific allegations surrounding its

15   participation in the conspiracy).

16           The cases Skilstaf cites, *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038 (9th

17   Cir. 2008), and *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), for the proposition that,

18   "RICO's enterprise element does not require the allegation or proof of any separate organizational

19   structure" have been overruled by the Supreme Court.  (Pl.'s Opp at. 30:5-31:3)  In *Boyle v.*

20   *United States*, 129 S. Ct. 2237, 2244 (2009), the Court explicitly rejected the reasoning in *Odom*

21   and *Newcal Industries* – according to *Boyle*, "an association-in-fact enterprise must have a

22   structure."  Skilstaf's Complaint is devoid of a single allegation of a common communications

23   mechanism, or the giving and taking of direction, or any other hallmark of structure between

24   McKesson and First DataBank, on the one hand, and the RICO Defendants, on the other.  Further,

25   as explained above, Skilstaf's conclusory allegation of a common purpose shared by McKesson,

26
     ────────────────────────────────
     diagnoses for the sole purpose of extracting money from plaintiff); *Puerto Rico Am. Ins. Co. v.*
27   *Burgos*, 556 F. Supp.2d 86, 88 (D. Puerto Rico 2008) (fraudulent and systematic creation of
     "bogus" claims based on "fictitious accidents"); *Klay v. Humana, Inc.* 382 F.3d 1241 (11th Cir.
28   2004) (fraudulent denial or disruption of the payment of claims by defendant).

1   First DataBank, and the RICO Defendants is contradicted by the facts pled in the Complaint.  *See*

2   *infra*, pp. 20-21.

3            **C.       The Complaint Alleges No Facts Showing A Pattern of Racketeering**

4            Skilstaf acknowledges that it must plead the underlying predicate acts, here mail and wire

5   fraud, with particularity under Rule 9(b).  (Pl.'s Opp. at 34:9-12.)  However, Skilstaf argues that it

6   need not identify specific misrepresentations, or instances of the use of interstate mail or wire

7   facilities, "because Plaintiff alleges that the RICO Defendants engaged in a conspiracy to defraud

8   Plaintiff."  (Pl.'s Opp. at 35:1-3.)  Here, Skilstaf misleadingly conflates its § 1962(c) substantive

9   RICO claim with its § 1962(d) RICO conspiracy claim.  Although Skilstaf need not plead specific

10  predicate acts as to each defendant to make out its conspiracy claim under § 1962(d) , it must do

11  so to state a claim for a substantive violation under § 1962(c).  *See Dooley v. Crab Boat Owners*

12  *Ass'n*, No. C 02-0676 MHP, 2004 WL 902361, at *7 n.14 (N.D. Cal. Apr. 26, 2004) ("[I]n order

13  to be liable under section 1962(c), each of these defendants must have committed at least two

14  predicate acts within ten years."); *Diaz v. Century Pac. Inv. Corp.*, No. CV 91-1329-WMB, 1991

15  WL 331372, at *2 (C.D. Cal. Dec. 16, 1991) (dismissing § 1962(c) claim as to one RICO

16  defendant as to whom plaintiff failed to allege predicate acts of racketeering).

17           The cases Skilstaf cites do not help its position.  In *Swartz v. KPMG LLP*, 476 F.3d 756,

18  765 (9th Cir. 2007), the court dismissed plaintiff's claims against two individual defendants under

19  Rule 9(b) because "the complaint is shot through with general allegations that the 'defendants'

20  engaged in fraudulent conduct but attributes specific misconduct only to [other defendants]."  The

21  court held that the plaintiff's "conclusory allegations" that the individual defendants knew about

22  the allegedly false statements and were "active participants in the conspiracy" were insufficient as

23  a matter of law.  *Id.*  Likewise, here, Skilstaf's allegations of specific misconduct by McKesson

24  and First DataBank, together with conclusory allegations that the RICO Defendants knew about

25  and participated in the misconduct, fail to satisfy Rule 9(b).

26           In *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-2609, 2009 U.S. Dist. LEXIS

27  86451, at *40-42 (E.D.N.Y. Sep. 21, 2009), the plaintiff insurer alleged a RICO scheme involving

28  the submission of false claims.  The court found that the plaintiff satisfied Rule 9(b) by attaching

1   to its complaint "an extensive sampling of statements alleged to be fraudulent, including dates of

2   mailing, correspondence claim numbers, entities which submitted many of the claims, the price

3   allegedly paid by the submitting entity and the price charged by the plaintiff." *Id.* at *41.

4   Further, the plaintiff in *Grafman* alleged "each defendant's . . . role in those statements" and

5   explained "why the statements were fraudulent." *Id.* at *42.

6       In stark contrast to *Grafman,* Skilstaf simply alleges that the RICO Defendants submitted

7   "fraudulent" claims for reimbursement, but fails to identify even one such claim, let alone specify

8   the date of mailing, claim number, entity that submitted the claim, the price charged or paid, or

9   the reason it believes the claims submitted were allegedly fraudulent.  That is legally insufficient.

10   *See In re Jamster Mktg. Litig.*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May

11   22, 2009) ("Pleading by adjective does not comply with Rule 9(b).").

12

       **D.**     **The Complaint Does Not Allege Facts Sufficient To Sustain A RICO Conspiracy Claim**

13

14       Skilstaf does not dispute that, in order for liability to attach under § 1962(d), the RICO

15   Defendants must, at minimum, have "know[n] about and agreed to facilitate the scheme."  (Pl.'s

16   Opp. at 36:4-5 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997).)  Yet, Skilstaf is unable

17   to point to any factual allegations in the Complaint that support its conclusory allegation that "the

18   RICO Defendants knew that McKesson and First Data[Bank] were engaged in the fraudulent

19   inflation of AWPs . . . and continued to submit false claims based on this fraudulent data to End

20   Payors for the RICO Defendants' direct benefit."  (Compl. ¶ 329.)  Instead, the "evidence" in the

21   Complaint on which Skilstaf relies in an effort to save its § 1962(d) claim demonstrates why that

22   claim should be dismissed.

23       First, Skilstaf points to paragraphs 271 to 276 (Pl.'s Opp. at 36:14), where it alleges that

24   McKesson had to "market [its] efforts by informing customers like the RICO Defendants that it

25   was doing everything possible to raise AWPs," lest "some of these accounts . . . believe that this

26   stuff just happens and our efforts will go unrecognized."  (Compl. ¶ 273 (internal quotations

27   omitted).)  Far from suggesting that the RICO Defendants "knew about and agreed to facilitate

28   the scheme," to fraudulently inflate prices, these allegations demonstrate just the opposite — that

the RICO Defendants were *unaware* that McKesson and First DataBank had any role in raising AWPs until informed by McKesson. Second, Skilstaf points to paragraphs 217 to 297, which contain communications between third parties, including McKesson and First DataBank, *about* the RICO Defendants. (Pl.'s Opp. 36:12-14.) Nowhere does Skilstaf allege that any RICO Defendant was asked to or agreed to take any action in furtherance of the scheme. Indeed, Skilstaf pleads no facts showing that the defendants knew that the prices were rising as a result of fraud or manipulation. At most, the allegations may suggest that the RICO Defendants benefited from the rising prices set by McKesson and First DataBank, but "this is not the standard for determining whether a party engaged in a RICO conspiracy." *See Natomas Gardens Inv. Group, LLC v. Sinadinos*, No. CIV. S-08-2308 FCD/KJM, 2009 WL 1363382, at *19 (E.D. Cal. May 12, 2009). Rather, Skilstaf must allege facts which, if proven, show that the RICO Defendants agreed to participate in the alleged fraudulent scheme. *See Salinas v. United States*, 522 U.S. at 65. Skilstaf has not alleged such facts, and it cannot do so.

## IV. SKILSTAF ALSO FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A. An Unjust Enrichment Claim Is Legally Unsustainable Where, As Here, Express Contracts Govern The Parties' Rights, Regardless Of Contractual Privity

Skilstaf seeks "restitution" of payments Defendants were entitled to receive under express contracts. Those written contracts required Skilstaf to make, and entitled to Defendants to receive, payments *based upon the Average Wholesale Price published by First Databank*. *See* Pl.'s Opp. at 37:13-17 & fn.37. The cases make clear, and Skilstaf concedes, that unjust enrichment cannot be invoked to evade the express price terms of a written contract. *See* Pl.'s Opp. at 38:2-19.

Skilstaf argues that it had no contract *directly* with Defendants. *See* Pl.'s Opp. at 37:13-17. The cases make clear this distinction makes no difference. Skilstaf alleges that it (like other third-party payors) entered into a "contract with intermediaries called pharmacy benefit managers to negotiate prices . . . with retail pharmacies." *See* Compl. ¶ 81. Skilstaf alleges that it was the intermediaries who entered into contracts with Defendants. *Id.* at ¶¶ 82, 86.

1    Courts repeatedly have rejected unjust enrichment claims in precisely such circumstances.

2  *See California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151

3  (2001)  (doctors represented by plaintiff had contracts with "intermediaries" that, in turn, had

4  contracts with defendant health plans); *Alexander v. Alabama Western R.R. Co.*, 60 So. 295 (Ala.

5  1912) (plaintiff sub-contractor had contract with construction company which, in turn, had

6  contract with defendant).[13]  In both *California Medical* and *Alexander*, the plaintiff had a contract

7  with a third party, and it was the third party that had a contract with the defendant.  The courts

8  nevertheless rejected the unjust enrichment and other equitable claims because the contracts

9  between the various parties defined their payment obligations.  *See* Def.'s Mem. at 36:1-17 &

10  36:24-37:3.

11    Skilstaf also contends that Defendants attack Skilstaf's restitution allegations "only" under

12  Alabama and California law.   *See* Pl.'s Opp. at 37 fn.36.  That is simply not true. Defendants

13  established that the law is the same in the nine states that could conceivably be relevant to

14  Skilstaf's claim, including Alabama and California.[14]  Skilstaf forgets that at this juncture, this is

15  an individual case brought by Skilstaf, not the nationwide class action Skilstaf hopes to pursue.

16  In any event, Skilstaf fails to identify a single case in any jurisdiction where a plea for

17  "restitution" can undo the express terms of written contracts.

18    To the contrary, the only cases to consider the point have expressly rejected the very

19  argument that Skilstaf makes here – that privity of contract is required to defeat an unjust

20  enrichment claim.  In *Servewell Plumbing, LLC v. Summit Contractors, Inc.,* 210 S.W.3d 101,

21  112 (Ark. 2005), for example, a plumber entered into a contract with a general contractor, who in

22  _____

23  [13]  *Alexander* remains good law nearly a century after the Alabama Supreme Court first decided
    it; equity will not rewrite an express contract even where the contract is not directly between

24  plaintiff and defendant.  *Vardaman v. Florence City Bd. of Educ.,* 544 So.2d 962, 964-65 (Ala.
    1989).

25  [14]  In addition, as demonstrated in Defendants' opening brief, in at least the nine states whose law
    could conceivably apply to Skilstaf's claim under choice of law principles, equity will not undo

26  the express terms of a written contract.  *See* Def.'s Mem. at 35:1-6 & 12-13 & n.28 (citing law of
    California, Alabama, Idaho, Pennsylvania, Arkansas, Illinois, Rhode Island, Ohio and

27  Minnesota); *see also* Compl. ¶¶ 40-49; Restatement 2d Conflicts of Laws § 221 (factors for
    choice of law for unjust enrichment include where enrichment was received, place where the act

28  conferring the enrichment was done, and the domicile and place of business of the parties).

1  turn had a contract with a developer.  The contracts among the parties defined their payment

2  rights and obligations.  *See id.* at 104.  The subcontractor nevertheless sought to recover in equity

3  from the developer relief it could not recover from the general contractor, arguing that it could

4  recover in equity because it had no contract *directly with the developer*.  *See id.*  The court

5  rejected the subcontractor's argument, holding that where, as here, the rights and duties were set

6  by the contracts between the various parties, equity could not intervene.  *See id.* at 112-13; *see*

7  *generally*, Def.'s Mem. at 35 fn.28 (citing cases).  Skilstaf cannot avoid a motion to dismiss by

8  hinting that there *could be law* (though it hasn't found any) in some *other jurisdiction* (which

9  Skilstaf doesn't identify) which *might* support Skilstaf's claim.  In the jurisdictions relevant to

10  Skilstaf's claim, the law bars a claim of unjust enrichment in such circumstances.

11        **B.    Skilstaf Is Unable to Allege Facts Demonstrating that Each Defendant Has**
             **Been Enriched By Skilstaf, Let Alone *Unjustly* Enriched**
12

13        Skilstaf concedes that it would have no claim of unjust enrichment against a defendant

14  that had not actually received payment from Skilstaf.  *See* Pl.'s Opp. at 39:23-40:17. Despite

15  conceding that the locations of the nine Defendants' retail pharmacy operations differ, Skilstaf

16  lumps all the Defendants together and alleges, *"upon information and belief,"* that it "paid

17  Defendants for Marked-Up Drugs at prices based on First Data and/or Medispan AWPs."  *See*

18  Pl.'s Opp. at 41:23-42:3 (quoting Compl. at ¶ 40) (emphasis added).  Skilstaf's generic,

19  conclusory, and tentative assertion as to "Defendants" is insufficient to "nudge[] . . . across the

20  line from conceivable to plausible" Skilstaf's claim that regional retail pharmacy chains – most of

21  whom are not even alleged do business in Skilstaf's home state – were *each* unjustly enriched at

22  Skilstaf's expense.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[15]

23        By alleging enrichment of the Defendants collectively – and only "on information and

24  belief," *id.* at ¶ 40 – Skilstaf reveals that its claim is based on the hope, rather than the fact, that

25  ─────────────────
   [15]  Skilstaf never alleges that any of the nine Defendants actually filled a prescription for one of
26  Skilstaf's employees during the relevant time period.  Skilstaf alleges that it and the employees to
   whom it provides prescription drug coverage are located in Alabama.  *See* Compl., ¶ 40.  Skilstaf
27  makes no specific allegations regarding the operations of most of the Defendants.  *See id.* at ¶¶
   41, 42, 44, 46, 47 and 49.  For others, Skilstaf alleges that they operate pharmacies in *some* states
28  but fails to specify whether Alabama is one of them.  *See id.* at ¶¶ 43, 45.

1   Skilstaf actually paid each of the nine named Defendants – or any of them – for pharmaceuticals

2   during the relevant time period.  Hope is not enough.  *See Bertucelli v. Carreras*, 467 F.2d 214,

3   215 n.4 (9th Cir. 1972) (pleading on information and belief is "improper" unless missing facts are

4   "peculiarly within the knowledge of the defendants"); Wright & Miller, 5 Fed. Prac. & Proc. §

5   1224 (3d ed. 2009) ("[P]leading on information and belief is not an appropriate form of pleading

6   if the matter is within the personal knowledge of the pleader or 'presumptively' within his

7   knowledge, unless he rebuts that presumption.").  Skilstaf cannot proceed with a claim that it

8   would be unjust for Defendants to retain something that Skilstaf is unable adequately to allege

9   they ever even received.  *See Twombly*, 550 U.S. at 555 (to survive motion to dismiss, "[f]actual

10  allegations must be enough to raise a right to relief above the speculative level")*; see also*

11  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009) ("Rule 8 . . . does not unlock the

12  doors of discovery for a plaintiff armed with nothing more than conclusions.").

13          Skilstaf suggests that even if it cannot assert claims against each Defendant, other persons

14  might have such claims.  Pl.'s Opp. at 42:24-26.  As discussed above, however, whether other

15  unidentified plaintiffs not before the Court might or might not have claims is irrelevant.  The

16  question is whether *Skilstaf* has pled a claim against each Defendant.  Because Skilstaf has failed

17  to do so, its unjust enrichment claim should be dismissed.

18                              **<u>CONCLUSION</u>**

19          For the foregoing reasons, Defendants' motion to dismiss Skilstaf's Complaint with

20  prejudice should be granted.

21                              Respectfully submitted,

22

23

24

25

26

27

28

1    Dated:  December 18, 2009                    SONNENSCHEIN NATH & ROSENTHAL LLP

2

3                                                          */s/ Steven H. Frankel*
                                                   Steven H. Frankel, State Bar No.171919
4                                                  C. Michael Moore (admitted *pro hac vice)*
                                                   Sandra D. Hauser (admitted *pro hac vice)*
5                                                  Drew W. Marrocco (admitted *pro hac vice*).
                                                   SONNENSCHEIN NATH & ROSENTHAL LLP
6                                                  525 Market Street, 26th Floor
                                                   San Francisco, CA  94105-2708
7                                                  Telephone:  (415) 882-5000
                                                   Facsimile:  (415) 882-0300
8
                                                   Attorneys for Defendant, Wal-Mart Stores, Inc.
9

10   Dated:   December 18, 2009                    MUNGER TOLLES & OLSON LLP

11

12                                                          */s/ Michael Robert Doyen*
                                                   Gregory P. Stone, State Bar No. 078329
13                                                 Michael Robert Doyen, State Bar No. 119687
                                                   Lynn H. Scaduto, State Bar No. 205291
14                                                 Carolyn  Hoecker Luedtke, State Bar No. 207976
                                                   Yuval Miller, State Bar No. 243492
15                                                 MUNGER TOLLES & OLSON LLP
                                                   355 S. Grand Avenue, 35th Floor
16                                                 Los Angeles, CA  90071-1560
                                                   Telephone:  (213) 683-9100
17                                                 Facsimile:  (213) 687-3702

18                                                 Attorneys for Defendant, Safeway, Inc.

19

20

21

22

23

24

25

26

27

28

1  Dated:   December 18, 2009                    FOLEY & LARDNER LLP

2
                                          /s/ Page R. Barnes
3                                      Page R. Barnes, State Bar No. 154539
                                       Tami S. Smason. State Bar No. 120213
4                                      Robert H. Griffith (admitted *pro hac vice*]
                                             FOLEY & LARDNER
5                                        One Maritime Plaza, Suite 600
                                           San Francisco, CA 94111
6                                        Telephone:  (415) 438-6456

7
                                            Attorneys for Defendants
8                                   CVS Caremark Corp. and Longs Drugs Stores
                                                  Corporation
9

10  Dated:  December 18, 2009                    HOGAN & HARTSON LLP

11

12                                       /s/ Laurence A. Weiss
                                       Laurence A. Weiss, State Bar No. 164638
13                                     Kristi Kaye Elder, State Bar No. 231996
                                           HOGAN & HARTSON LLP
14                                      525 University Avenue, 4th Floor
                                             Palo Alto, CA 94301
15                                       Telephone:  (650) 463-4000
                                         Facsimile:  (650) 463-4199
16

17                                 Attorneys for Defendant, The Kroger Co.

18

19  Dated:  December 18, 2009               MCDERMOTT WILL & EMERY LLP

20
                                             /s/ Matt Oster
21                                     Matt Oster, State Bar No. 190541
                                       MCDERMOTT WILL & EMERY LLP
22                                     2049 Century Park East, 38th Floor
                                          Los Angeles, CA  90067
23                                       Telephone:  (310) 277-4730
                                         Facsimile:  (310) 277-4730
24

25                                 Attorneys for Defendant, Walgreen Co.

26

27

28

1    Dated:  December 18, 2009                         NIXON PEABODY LLP

2

3                                            _____/s/ Robert Ahlefeld Weikert_____
                                             Robert Ahlefeld Weikert, State Bar No. 121146
4                                            NIXON PEABODY LLP
                                             One Embarcadero Center, 18th Floor
5                                            San Francisco, CA 94111-3600
                                             Telephone:  (415) 984-8385
6                                            Facsimile:  (866) 294-8842

7                                            Fred A. Kelly, Jr. (admitted pro hac vice)
8                                            David M. Ryan (admitted pro hac vice)
                                             NIXON PEABODY LLP
9                                            100 Summer Street
                                             Boston, MA 02110-2131
10                                           Telephone:  (617) 345-1000
                                             Facsimile:  (617) 345-1300

11

12                                           Attorneys for Defendants
                                             New Albertson's, Inc. and Supervalu Inc.
13

14   Dated: December 18, 2009                         MORGAN, LEWIS BOCKIUS LLP

15

16                                           _____/s/ Peter Buscemi_____
                                             Peter Buscemi, State Bar. No. 255213
17                                           Thomas A. Schmutz (admitted pro hac vice)
                                             Susannah R. Henderson (admitted pro hac vice)
18                                           MORGAN LEWIS BOCKIUS LLP
                                             One Market, Spear Street Tower
19                                           San Francisco, CA 94105
                                             Telephone:  (415) 442-1000
20                                           Facsimile:  (415) 442-1001

21                                           Attorneys for Defendant, Rite Aid Corporation

22

23

24

25

26

27

28

## GENERAL ORDER 45 CERTIFICATION

I, Steven H. Frankel, hereby attest pursuant to N.D. Cal. General Order No. 45 that the concurrence to the filing of this document has been obtained from each signatory.

Dated:  December 18, 2009                    SONNENSCHEIN NATH & ROSENTHAL LLP


                                            */s/ Steven H. Frankel*_____
                                            Steven H. Frankel, State Bar No. 171919
                                            SONNENSCHEIN NATH & ROSENTHAL LLP
                                            525 Market Street, 26th Floor
                                            San Francisco, CA  94105-2708
                                            Telephone: (415) 882-5000
                                            Facsimile: (415) 882-0300
                                            sfrankel@sonnenschein.com

                                            Attorneys For Defendant,
                                            Wal-Mart Stores, Inc.